```
               UNITED STATES DISTRICT COURT

          FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

        Plaintiff,

 -vs-                                 Case No. 19-CR-8-JDP

MATTHEW BULOVSKY,                     Madison, Wisconsin
                                      August 29, 2019
        Defendant.                    2:06 p.m.
_____

  STENOGRAPHIC TRANSCRIPT OF **EXCERPT FROM SENTENCING** HELD BEFORE
        CHIEF U.S. DISTRICT JUDGE JAMES D. PETERSON

APPEARANCES:

For the Plaintiff:

              Office of the United States Attorney
              BY:  ELIZABETH ALTMAN
              Assistant United States Attorney
              222 West Washington Avenue, Suite 700
              Madison, Wisconsin  53703

For the Defendant:

              Law Office of Christopher T. Van Wagner
              BY:  CHRISTOPHER T. VAN WAGNER
              110 East Main Street, Suite 705
              Madison, Wisconsin  53703

Also appearing:    MATTHEW BULOVSKY, Defendant
                   RICHARD WILLIAMS, U.S. Probation Officer




               Jennifer L. Dobbratz, RMR, CRR, CRC
              U.S. District Court Federal Reporter
                  United States District Court
                120 North Henry Street, Rm. 410
                   Madison, Wisconsin  53703
                         (608) 261-5709
```

**(Excerpt from Proceedings)**

(Recess at 1:55 p.m. until 2:06 p.m.)

THE COURT: All right. Thank you for your patience. Thanks to counsel for their presentations. Always helpful.

Let me begin by making a few observations here: I appreciate Mr. Bulovsky's very articulate allocution. I think it demonstrates that he has made some good progress toward self-awareness. He expresses sincere regret and a sincere willingness to undertake treatment, so all that is meaningful to me.

I also agree with Mr. Van Wagner that whatever treatment needs that Mr. Bulovsky has or, at the very least, whatever treatment that is going to be provided to him within the Bureau of Prisons and including whatever might be available in a state sentence, all that can be accomplished within the mandatory minimum. So there's no need to extend any term of incarceration because there's treatment that we can't get any other way, and it wouldn't be appropriate to do that anyway. But within five years, he will get what we have to offer as far as treatment in the institution.

That's not the only consideration though, and so one of my other considerations are to provide for the safety of the public, and I do think that at this point in your life you do represent a danger to the public in that your compulsion to use child pornography is pretty well ingrained at this point. I

don't think that's necessarily a permanent state, but you seem kind of committed to it as a project in the recent past anyway. I know you're working on it, but, nevertheless, when I look at the circumstances here, I see that a lengthy term of incarceration seems appropriate at this point until you manage that, and so protection of the public is a goal.

Punishment is also a goal, and in connection with punishment, the sentence that I impose has to reflect the seriousness of your offense, and there are a number of things that we've discussed that I think demonstrate some real concern with the seriousness of your offense, and I'll highlight the ones that are most salient to me. First of all, you committed the offense while you were on bond for another similar charge, and so that is almost inevitably a very aggravating factor when I contemplate a sentence that I impose.

You are also, I think, keenly aware of the harm to the victims, and I'm talking about the adult women that you knew when you committed that crime, so you were aware that the things that you were doing were harmful to other people. There was also a very significant harm to the more anonymous victims of the child pornography. Now, you made some statements that suggested that you were not consciously aware, at least that you weren't really willing to entertain the harm that befell those children who were abused. That doesn't mean that there wasn't harm there just because you weren't thinking about it or didn't

1    take the time to really contemplate it, but when I look at it,
2    there was particularly egregious forms of abuse that were
3    depicted in those images, which are disturbing partly because
4    they were victimized by these horrible things that happened to
5    them and then also that you found it attractive or appealing to
6    look at.  And, of course, then you have the mandatory minimum
7    because of the distribution, but the distribution that you
8    accomplished actually amplified the harm that your wrongfulness
9    accomplished, so you multiplied that harm.
10        So all of those factors suggest a need for punishment
11   somewhat beyond the mandatory minimum, and I want to be clear
12   about this, that I don't think that the mandatory minimum,
13   although it's the lowest sentence I can legally impose, I don't
14   really think it's fair to say that, "Oh, well, that's just the
15   punishment that you get for the most minor conceivable offense."
16   I really look at it more holistically, and I say, "Look, it's a
17   five-year sentence."  It's imposed by me.  My discretion to
18   impose anything less is taken away, but I don't just say you
19   only get the mandatory minimum if you have the most minor
20   offense within this category.  I don't think that's the sound
21   way to look at it, so I don't look at it that way.  But when I
22   do look at the argument that Ms. Altman makes about the
23   seriousness of the offense, I think that something above the
24   mandatory minimum is required.
25        I also have to consider the parity of the sentence that I

1  impose to you with other people who face the Court, and, again,
2  I think when I look at that and the seriousness of the offense,
3  something above the mandatory minimum is appropriate.  So the
4  sentence that I'm going to impose is seven years, and I do think
5  that it is appropriate given the seriousness of the offense, but
6  I think that it's still a long way from the guideline sentence,
7  and I don't think that a guideline sentence really serves the
8  objectives here.  I don't want you to be in prison for a decade
9  before you begin to reintegrate your life.  I know that that --
10 it's easy to toss around a couple of years as though here in the
11 courtroom it's just, you know, just a mere two more years.  I
12 recognize that's two years of a young person's life, so it is a
13 very -- it's a serious, meaningful difference, but it's also a
14 huge difference from ten years, which is essentially what the
15 guidelines call for.
16      I'm going to stand silent on how my sentence runs with
17 respect to the sentence you get on the state charge.  I will say
18 this, that I have imposed a long sentence, as I said I'm
19 required to.  I've imposed a sentence that's even longer than
20 the mandatory minimum, and so it is really my aspiration or my
21 hope that this is your comprehensive sentence and that this
22 really marks the limits of your incarceration.  And so I will
23 say that I not only don't object to the proposal that Mr. Van
24 Wagner makes about how the sentence gets structured in state
25 court -- it's not up to me obviously, but if it were up to me, I

1  would endorse that idea, and I hope that the state judge views
2  it the same way, but that judge will have a more complete record
3  than I will. I don't have the complete record of both cases.
4  That judge will, and so I'll leave it to that judge, but I will
5  say that I think it's a sound approach to accomplish what we
6  want to in both of these cases here.
7  　　　　I will say this, that I have considered your character as
8  expressed by the actions that you took in that case, although I
9  haven't specifically punished you for those specific acts. It's
10 kind of almost a -- it's a very fine-grained distinction, but I
11 think it's the appropriate way to handle it. I really can
12 consider everything that's presented to me about your character,
13 so I think it's fair to consider it, but you're not really
14 charged with that crime here and you are charged somewhere else,
15 so I'm not specifically punishing you for that, but I certainly
16 have thought about it in deriving your sentence here. The
17 bottom line is I think that the proposal that Mr. Van Wagner
18 made is a sound one. I hope that's what the state court judge
19 does, but I'm not going to try to impose that on him or her
20 because I just don't have the full record of that case.
21 　　　　All right. I will make some recommendations to the Bureau
22 of Prisons. I will recommend that you get a mental health
23 evaluation and treatment. I don't really see a record here of a
24 serious substance abuse problem, but I do see a record of some
25 substance use, and you have indicated to me that you have used

1    pornography as a way of dealing with your anxieties and mental
2    health, and so it suggests to me that, you know, sometimes
3    people have ways of coping, and if one is not available, if
4    child pornography is not available, maybe you'll use more
5    marijuana or some other substance.  Sometimes people deal with
6    underlying problems in fluid ways so you use whatever is
7    available.  So I think it's appropriate to have you have a
8    substance abuse evaluation and treatment.  As I said, I don't
9    see a strong record of any serious substance abuse problem here,
10   but it's worth evaluating.
11       Of course, I will recommend that you receive sex offender
12   treatment.  I'll also recommend that you get residential
13   re-entry center placement at a residential re-entry center with
14   work release privileges, and I will also recommend that you be
15   placed -- designated to a facility that's as close as possible
16   to your family, subject, of course, to your security needs,
17   which should be relatively minimal, but also your treatment
18   needs, which are paramount.  So beyond that, I hope they can
19   keep you close to your family.  Frankly, that's probably nothing
20   more than the Bureau of Prisons would do on its own, but at
21   least I make a record of it here.  And I'm sorry about your
22   father's illness, and I wish your father the best of luck in his
23   treatment and recovery, so I'm pulling for you.  But it's a good
24   reason to make sure that I make that recommendation about
25   keeping you close to your family.

1    The term of incarceration will be followed by a period of
2    ten years of supervised release.  It's a relatively long term,
3    not as long as I could impose, but I'm hoping that you will deal
4    with your problem within those ten years, but because of the --
5    at this point what seems to be kind of an insistent use of child
6    pornography, I'm making it a relatively long term.
7        I didn't get any objections to the terms that were
8    proposed, and I'm prepared to impose the mandatory conditions as
9    well as conditions 1 through 9 and 11 through 23.  Frankly,
10   they're kind of the standard set for cases of this type, but
11   I'll give Mr. Van Wagner a chance to voice any concerns he has
12   with those conditions.
13           MR. VAN WAGNER:  I've reviewed them with my client, and
14   we don't have any in there that we would take any particular
15   objection to or, for that matter, suggest modifications at this
16   time.
17           THE COURT:  All right.  Very good.
18       Okay.  And, Mr. Bulovsky, have you -- you've reviewed those
19   conditions?
20           THE DEFENDANT:  Yes, sir.
21           THE COURT:  Okay.  Would you like me to read the
22   conditions or provide any further justification?
23           MR. VAN WAGNER:  We are satisfied to rely upon the
24   reading that Matthew has done and we've done together, and he
25   would waive his right to have them read aloud.

1            THE COURT:  All right.  Very good.  It gets kind of
2    tedious to do that.  They'll be in writing.  You'll have to sign
3    and acknowledge them.  I'll make one more observation about
4    them.  They can be changed.  So if, when you begin your
5    supervision or during your supervision, they need to be adjusted
6    or you want them to be adjusted, you can make a motion to the
7    Court to do that.  The government or the probation office can do
8    the same thing, so those conditions are not immovable.
9            So drug testing is addressed in Condition No. 20.
10           It is adjudged that the defendant is to pay the mandatory
11    $100 criminal assessment penalty to the Clerk of Court for the
12    Western District of Wisconsin immediately following sentencing,
13    and I will specifically encourage you to make sure you make that
14    payment before you begin your term of incarceration.  We've come
15    to understand that the failure to pay that criminal assessment
16    interferes with your ability to get into programming, so it's to
17    your benefit to get that paid off.
18           All right.  Then we have the issues of the -- we'll take
19    the simple one first.  I got a final order of forfeiture filed,
20    I think it was today, but it seems to be in order.  Is there any
21    objection to the --
22           MR. VAN WAGNER:  I've reviewed it.  We have no
23    objection to its form.
24           THE COURT:  I will enter that and put that on the
25    docket, so that takes care of the forfeiture.

1          MS. ALTMAN:  Thank you.
2          THE COURT:  Then we've got the issue of the special
3   assessment and restitution.  Let's discuss that.  Mr. Bulovsky
4   is not indigent, and I don't think the restitution order is
5   settled.  I'm bringing them up together because, you know, we
6   had the *Brown* case in which the special assessment and the
7   restitution was kind of considered as a piece, and if victims
8   can get restitution rather than having the government get a
9   special assessment, that seems closer to justice to me.  So let
10  me hear what you have to say.
11         MS. ALTMAN:  I think we have it resolved, Your Honor,
12  where one of the victims has requested $3,000, and that's agreed
13  to.  One of the victims has requested $5,000.  That's agreed to.
14  And they also agree to pay the special assessment because they
15  have that capability.
16         THE COURT:  Is that right, Mr. Van Wagner?
17         MR. VAN WAGNER:  That is a correct statement.
18         THE COURT:  All right.  Very good.  I will then order
19  that there's mandatory restitution to be paid in the amount of
20  $3,000 to one of the victims and $5,000 to the other victim.
21  That should be submitted to the Clerk of Court, and I gather
22  that you have the resources to do that so we don't have to
23  schedule that, just order that that will be paid promptly after
24  sentencing?
25         MR. VAN WAGNER:  It will.  Just so you know, my client

1  has been assisted with his finances since incarcerated by his
2  mother, Caryn, who sits behind, and she does have the authority
3  to write the checks off of the bank accounts that he has that
4  have the funds that were listed in the PSI, and that will be
5  taken care of promptly, if not today, certainly within the next
6  ten days.
7              THE COURT:  All right.  Very good.  And so that will be
8  submitted to the Clerk of Court for the Western District of
9  Wisconsin to -- for disbursement to the victims.  The clerk has
10 the addresses of the victims, so that will take care of that,
11 and then I will impose the $5,000 special assessment as well.
12             MS. ALTMAN:  Your Honor, I have not provided the
13 names -- I had them written down and, of course, forgot them at
14 my office -- to where the restitution should be paid.
15             THE COURT:  Okay.
16             MS. ALTMAN:  But I will email Ms. Balderas -- not
17 Balderas anymore; I'm sorry -- Ms. Olmo the restitution -- who
18 should be paid when I get back to the office.
19             THE COURT:  All right.  Very good.  So if you will do
20 that, that would be great.
21      I will decline to pay a fine -- to impose a fine.  The
22 sentence that I have imposed is a substantial punishment, and
23 because of the substantial restitution and the special
24 assessment, I decline to impose even a modest fine.  I think it
25 would be not a meaningless gesture but, in the scope of the

Case: 3:19-cr-00008-jdp Document #: 34 Filed: 09/13/19 Page 12 of 14

12

1   sentencing, nearly a symbolic gesture of little value, and I do
2   not want to impair Mr. Bulovsky's resources when he gets out.
3   Despite the fact that he has some cash to pay the restitution, I
4   still think having some resources would be useful to him when he
5   gets out and needs to support himself.  I don't think it's
6   necessary to drive him into poverty on top of everything else.
7        I talked about the final order of the forfeiture.
8        The probation office is to notify the local law enforcement
9   agencies and the state attorney general of the defendant's
10  release to the community.
11       I believe Counts 2 through 4 are going to be dismissed?
12           MS. ALTMAN:  Yes, Your Honor.
13           THE COURT:  I will order that those be dismissed.
14       Mr. Bulovsky, you've got the right to appeal your
15  conviction if you think your plea was somehow unlawful or
16  involuntary.  You've got the right to appeal your sentence if
17  you think the sentence is contrary to law.  If you want to
18  appeal, you have to file your appeal within the deadlines, and
19  that means within 14 days of entry of judgment in this case or
20  within 14 days of any notice of appeal that would be filed by
21  the government if they were to appeal.  And if you can't afford
22  an attorney -- can't afford the filing fee, you can apply for
23  leave to appeal *in forma pauperis*, which means without paying
24  the filing fee, and if you can't afford an attorney to represent
25  you in the appeal, you can apply for court-appointed counsel at

```
 1     government expense.
 2            I think I have covered everything, but let's check in.  Mr.
 3     Van Wagner, anything else?
 4               MR. VAN WAGNER:  No, Your Honor.
 5               THE COURT:  Ms. Altman?
 6               MS. ALTMAN:  No, Your Honor.  Thank you.
 7               THE COURT:  Mr. Williams?
 8               OFFICER WILLIAMS:  No, Your Honor.  Thank you.
 9               THE COURT:  Thank you, all.  Good luck to you.
10           (Proceedings concluded at 2:21 p.m.)
11                                   ***
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1         I, JENNIFER L. DOBBRATZ, Certified Realtime and Merit
 2   Reporter in and for the State of Wisconsin, certify that the
 3   foregoing is a true and accurate record of the proceedings held
 4   on the 29th day of August, 2019, before the Honorable
 5   James D. Peterson, Chief U.S. District Judge for the Western
 6   District of Wisconsin, in my presence and reduced to writing in
 7   accordance with my stenographic notes made at said time and
 8   place.
 9         Dated this 13th day of September, 2019.
10
11
12
13
14
15                                   _____/s/ Jennifer L. Dobbratz_____
16                                   Jennifer L. Dobbratz, RMR, CRR, CRC
                                           Federal Court Reporter
17
18
19
20
21
22
23
24   The foregoing certification of this transcript does not apply to
     any reproduction of the same by any means unless under the
25   direct control and/or direction of the certifying reporter.
```